In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00519-CR
_____

**JOHN LAVETTE JACKSON III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B-130353-R**

**MEMORANDUM OPINION**

A jury convicted appellant John Lavette Jackson III of robbery and assessed punishment at twelve years of confinement. In his sole appellate issue, Jackson challenges the sufficiency of the evidence supporting his conviction. We affirm the trial court's judgment of conviction.

BACKGROUND

The two-paragraph indictment alleged that while committing theft of property, Jackson (1) recklessly caused bodily injury to complainant Cameron

Ricks by hitting Ricks on the shoulder, arm, and body, and (2) intentionally and knowingly threatened and placed complainant Darrell McFarland in fear of imminent bodily injury or death by driving away in a vehicle and causing the vehicle to "swerve back and forth" while McFarland was holding onto the outside of the vehicle.

Ricks, a dairy helper at Market Basket on February 1, 2013, the day the incident occurred, testified that he was helping to stock candy near the front of the store when he saw Michael Sattler, the head manager, following a woman around the store. The woman was subsequently identified as Rebecca Blanchette. Ricks explained, "[w]henever managers do that, they're typically watching somebody, thinking that they're about to . . . steal an item." Sattler testified that he saw Blanchette get out of a Jeep and enter the store with what appeared to be an empty purse. Sattler saw Blanchette enter the store at a brisk pace, remove a bottle of Pennzoil from the shelf, and eventually open her purse and put the bottle into her purse. Ricks saw Sattler following very quickly after Blanchette, who had a bag clutched beneath her arm.

Ricks and Sattler saw Blanchette walk past the checkout lanes without paying and go outside, and Ricks went outside "to intercept her and ask her to come back in the store." Ricks saw Blanchette walking toward a white Jeep

Cherokee that was parked "right outside the doors," and he placed himself between Blanchette and the Jeep and asked her to come back into the store. Sattler told Blanchette that he believed she had stolen something and asked her to re-enter the store. Ricks testified that he did not touch Blanchette, but Blanchette began shoving Ricks and telling him he could not touch her. Sattler attempted to pull Blanchette away from Ricks. Ricks testified that Blanchette caused him pain, but he did not receive "long-term injuries or anything like that." Sattler instructed Ricks to let Blanchette go because he had seen the license plate, and Blanchette got into the Jeep.

McFarland, co-manager at Market Basket, testified that he went outside because a cashier told him Sattler needed help outside. As McFarland approached the store's door, he saw a female struggling with Sattler, and by the time McFarland reached the door, the female was "getting away" and was heading toward the Jeep. Ricks and Sattler testified that McFarland ran to the driver's side of the Jeep to ask the driver not to leave, but the driver nevertheless proceeded to leave. According to Ricks, McFarland grabbed the roof rack of the Jeep, and Jackson, who was driving the vehicle, "proceeded to go across the parking lot, swerving back and forth, obviously trying to get him off the vehicle." Likewise, Sattler testified that Jackson was "swerving, trying to get Mr. McFarland to fall off

3

the vehicle as Mr. McFarland was trying to turn the key." McFarland also testified that he approached the driver's side of the Jeep to tell the driver to stop, and he held onto the vehicle as it began to roll away. In addition, Sattler testified that McFarland was hanging onto the Jeep as it began to move away. According to McFarland, Jackson rolled down the window and told McFarland to get off of the vehicle, and Jackson began driving faster and swerving.

McFarland testified that he avoided having to jump off the vehicle because Jackson decided to stop very quickly, and when Jackson stopped, McFarland grabbed Jackson's key and put the vehicle into park, and Blanchette "jumped out and started on foot." Jackson told McFarland "he is stupid because he could have gotten himself killed." Ricks testified that Jackson appeared to be angry. According to McFarland, when Jackson got out of the Jeep, "[h]e was bowed up and in that stance position to where you would assume he was going to hit you or at least attempt something." McFarland explained that he was scared he would be hurt if the vehicle had not stopped. However, McFarland explained that he was not injured because the vehicle stopped. Sattler followed Blanchette after she got out of the Jeep and walked toward the alleyway, and a police officer arrived "very

4

quickly." Sattler saw that Blanchette had put the Pennzoil into a dumpster, and Sattler informed the police officer of what he observed.[1]

Officer Chase Alexander of the Vidor Police Department testified that he was working the day shift on February 1, 2013. While Officer Alexander was conducting a traffic stop nearby, he heard the radio dispatcher advice that Market Basket employees had detained a female. He looked across the parking lot, and he saw that a white Jeep was parked and observed a blonde female running through the parking lot while Market Basket employees were chasing her. Officer Alexander testified that he then got into his patrol vehicle, activated his siren, and proceeded to the Market Basket parking lot, where he saw the employees pointing behind a building. He testified that as soon as he saw the woman, he "knew her by sight to be Rebecca Nicole Blanchette." Blanchette told Officer Alexander that she was trying to buy oil from Market Basket. Officer Alexander drove his vehicle behind the building and found the stolen Pennzoil in one of the dumpsters. The State rested at the conclusion of Officer Alexander's testimony.

Blanchette testified that she was with Jackson on February 1, 2013, in a white Jeep. According to Blanchette, Jackson was driving the Jeep, and she was

[1]Milton "Wesley" Baldree testified regarding his observations of the same events about which Ricks and Sattler testified. For the sake of brevity in this memorandum opinion, we do not recite the substance of Baldree's testimony here. *See* Tex. R. App. P. 47.1.

5

Jackson's passenger. Blanchette testified that she asked Jackson to stop at the Crossroads Shopping Center so she could use the restroom, so Jackson stopped the Jeep in front of Market Basket. Blanchette denied telling Jackson about any other purpose for the stop. Blanchette testified that her true intention was to get some oil, but she never told Jackson that she had stolen any merchandise, and she had concealed the oil in her purse. Blanchette directed Jackson to leave when she got into the Jeep, and the car slowly rolled away. According to Blanchette, Jackson never accelerated the Jeep. Blanchette testified that she went behind the building and "hid the oil in the dumpster." The defense rested when Blanchette's testimony concluded.

The application paragraph of the trial court's charge to the jury as to paragraph one of the indictment instructed the jury to determine whether: (1) Blanchette intentionally, knowingly, or recklessly caused bodily injury to Ricks (2) in the course of committing theft of property owned by Sattler (3) with intent to obtain or maintain control of the property, (4) Jackson aided or attempted to aid Blanchette in committing the offense, and (5) Jackson acted with intent to assist in the commission of the offense by Blanchette. The trial court's charge instructed the jury that if all jurors agree that the State has proved all five elements, it must find Jackson "guilty" as charged in paragraph one of the indictment and instructed the

6

jury not to consider whether Jackson was guilty of robbery as alleged in paragraph two of the indictment. The charge also included an instruction on the law of parties. The jury found Jackson guilty under paragraph one and, therefore, did not decide Jackson's guilt or innocence as to paragraph two. As part of its punishment findings, the jury found that Jackson used a vehicle as a deadly weapon during the commission of robbery. The jury assessed Jackson's punishment at twelve years of confinement. The trial court signed a judgment of conviction in accordance with the jury's verdict.

## JACKSON'S ISSUE

In his sole appellate issue, Jackson challenges the sufficiency of the evidence to support his conviction. As part of his argument, Jackson contends the evidence was insufficient to support the deadly weapon finding because he was found "not guilty" as to paragraph two of the indictment, which dealt with use of the vehicle. When evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Because the indictment alleged that Jackson

7

was responsible for the conduct of Blanchette, and the jury was instructed as to the law of parties, Jackson's conviction may be upheld upon proof that the offense was committed "by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" *Id*. § 7.02(a)(2) (West 2011).

The jury is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894-95; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. We may not substitute our judgment for that of the factfinder concerning the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

As discussed above, the trial court's charge instructed the jury not to reach the issue of whether Jackson was guilty under paragraph two of the indictment if the jury found him guilty under paragraph one. Therefore, Jackson's contention

8

that the jury found him "not guilty" as to paragraph two, which involved the use of a vehicle, is erroneous. The jury heard evidence that a Jeep driven by Jackson dropped Blanchette off in front of Market Basket, and Blanchette entered the store and took a bottle of Pennzoil without paying for it. In addition, the jury heard evidence that after taking the item, Blanchette walked back toward the Jeep, and that Blanchette began shoving Ricks. The jury further heard evidence that McFarland grabbed the Jeep as it began to move away, and Jackson began swerving the Jeep back and forth, causing McFarland to fear for his safety. The jury also heard evidence that Jackson rolled down the window and told McFarland to get off of the vehicle, and Jackson ultimately stopped the Jeep abruptly and quickly. The jury heard evidence that Jackson appeared to be angry. The jury further heard Blanchette's testimony that Jackson was unaware of her intention to steal something from the store or that she had done so. Because juries are the exclusive judge of the facts, credibility of the witnesses, and weight to be given the testimony, the jury was free to disbelieve Blanchette's testimony. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987).

Viewing the evidence in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Jackson was guilty of

robbery under the law of parties, and of using a deadly weapon during the course of committing the offense. *See Hooper*, 214 S.W.3d at 13; *see also* Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2). Accordingly, we overrule Jackson's sole issue and affirm the trial court's judgment of conviction.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 7, 2014
Opinion Delivered November 19, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.